NOTICE

Decision filed 04/26/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 170283-U

NO. 5-17-0283

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-CF-1612 |
| | ) | |
| JAVONTA T. PITTS, | ) | Honorable |
| | ) | Robert B. Haida, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court's order denying defendant's amended motion to withdraw guilty plea and vacate sentence is affirmed where the record supports a finding that postplea counsel satisfied the substantive requirements of Rule 604(d) in making amendments necessary for the adequate presentation of defendant's claims.

¶ 2     Defendant, Javonta T. Pitts, appeals from an order of the circuit court of St. Clair County denying his motion to withdraw his negotiated plea of guilty to a single count of first degree murder in violation of section 9-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/9-1(a)(1) (West 2014)).

1

¶ 3                                    I. Background

¶ 4      On December 3, 2014, defendant was charged by criminal complaint with first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)), a Class M felony, in St. Clair County, Illinois. The criminal complaint alleged that, on November 28, 2014, defendant, acting with codefendant, Romero Ellington, without lawful justification and with the intent to kill or do great bodily harm, shot Deangelo Williams in the face with a firearm, thereby causing his death. Shortly thereafter, on December 19, 2014, defendant was charged by criminal indictment for the same offense.[1] At the subsequent arraignment on January 9, 2015, defendant, represented by Attorney Alex Enyart, entered a plea of not guilty. Shortly thereafter, the circuit court assigned Attorneys Gregory Nester and Brian Flynn to serve as defendant's public defenders.

¶ 5      On October 16, 2015, the State informed defendant of its intent to seek a 25-year firearm enhancement due to defendant discharging a firearm during the commission of the offense. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2014) ("if, during the commission of the offense, the person personally discharged a firearm that proximately caused great bodily harm, permanent disability, permanent disfigurement, or death of another person, 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court"). In addition, the State filed a notice of intent to submit jury

_____

[1]We note that defendant was also charged in a separate complaint with two counts of armed robbery (14-CF-1613). On October 23, 2015, the State informed the circuit court that it did not intend to join the two counts of armed robbery with the charge of one count of first degree murder (14-CF-1612). On September 1, 2016, the State dismissed the two counts of armed robbery as part of the fully negotiated plea agreement with defendant.

instructions on multiple theories of first degree murder, including felony murder predicated on an uncharged offense of aggravated kidnapping.

¶ 6 On December 16, 2015, the circuit court allowed Attorney Nester to withdraw as defendant's public defender. Following the court's removal of Attorney Nester, Attorney Enyart was appointed as co-counsel with Attorney Flynn to represent defendant.

¶ 7 On January 15, 2016, defendant filed a handwritten *pro se* motion titled, "Motion for Appointment of Counsel Other than Brian Flynn due to the Client and Attorney Confidential Relationship Has Deteriorated." In this motion, defendant asserted that Attorney Flynn (1) had been pressuring him into accepting a plea agreement after defendant repeatedly advised that he wanted to go to trial, (2) had no confidence that defendant was innocent, (3) had refused to investigate the State's allegations against defendant, and (4) had advised that defendant would be unsuccessful at trial.

¶ 8 On January 21, 2016, following a hearing, the circuit court denied defendant's *pro se* motion. Attorney Flynn was representing defendant at this hearing. In particular, the court emphasized that, although Attorney Flynn was empowered to make strategic decisions, defendant was in control of whether the case went to trial, and defendant had the right to provide information to Attorney Flynn to assist in his defense. The court also informed defendant that his disagreement with Attorney Flynn's professional opinion regarding defendant's case did not mean Attorney Flynn was not adequately representing defendant. To further emphasize this point, the court, again, informed defendant that he had control over whether the case went to trial. Defendant responded that he understood.

¶ 9    On July 5, 2016, defendant filed a handwritten *pro se* motion with the circuit court titled, "Motion for Appointment of Counsel Other then [*sic*] Alex [Enyart] due to the Client and Attorney Confidential Relationship Has Deteriorated." Similar to defendant's January 15, 2016, *pro se* motion referencing Attorney Flynn, defendant asserted that Attorney Enyart (1) had been pressuring him into accepting a plea agreement after defendant repeatedly advised that he did not want to accept such agreement, (2) had no confidence that defendant was innocent, (3) had refused to investigate the State's allegations against him, and (4) had refused to respond to defendant's letters and (5) had advised that defendant would be unsuccessful at trial.

¶ 10    On July 7, 2016, following a hearing, the circuit court denied defendant's *pro se* motion. At the hearing, Attorney Enyart informed the court that he and Attorney Flynn, who was not present at the hearing, were reviewing discovery, preparing a defense in defendant's case, and would be ready for trial on August 1, 2016. In denying defendant's request for appointment of new counsel, the court reasoned that it had insufficient cause to conclude that Attorney Enyart was incompetent or had acted in a manner that demonstrated he would not adequately represent defendant at trial. Rather, the court stated that it had confidence in the ability of Attorneys Enyart and Flynn to assess and evaluate the evidence. Ultimately, the court explained that it "[had not] seen anything that is untoward or improper or reflects or suggests *** that [Attorney Enyart] is not representing you aggressively and competently in this *** case." In addition, the court clarified that it was "totally proper for [Attorney Enyart] to give his opinion as to whether [defendant] should accept [a plea deal] or not," and, given the serious nature of

4

defendant's charge, such suggestion did not mean Attorney Enyart would not aggressively represent defendant at trial. The court subsequently set the case for jury trial on September 12, 2016.

¶ 11 On September 1, 2016, the circuit court held a guilty-plea hearing with Attorney Enyart representing defendant. The State indicated that there was a fully negotiated plea agreement, subject to the court's approval, that entailed defendant pleading guilty to a new criminal information, filed on September 1, 2016, charging defendant with first degree murder without the firearm enhancement. Pursuant to the plea negotiations, the State would move to dismiss the criminal indictment, filed on December 19, 2014, charging defendant with first degree murder with the firearm enhancement and the two counts of armed robbery (*supra* ¶ 4 n.1). The newly filed criminal information included a first degree murder charge with a sentencing range of 20 to 60 years in the Illinois Department of Corrections (IDOC), to be served at 100% and followed by 3 years' mandatory supervised release (MSR). The State recommended, and defendant agreed, to serve 26 years in IDOC (at 100% pursuant to truth in sentencing) with 3 years' MSR.

¶ 12 The circuit court then admonished defendant of the statutory range of punishment regarding the original and newly filed charges against him. The court explained to defendant that the original criminal indictment carried with it a minimum sentence of 45 years to a maximum sentence of life in prison (to be served at 100%) with 3 years' MSR to follow. Defendant acknowledged that he understood. Before explaining the details of the plea agreement, defendant waived his right to a preliminary hearing on the newly filed criminal information. Next, the court explained that the newly filed criminal

5

information removed the firearm enhancement and reduced the sentencing range to a minimum of 20 years to a maximum of 60 years in IDOC, but that defendant would still serve 100% of the sentence, pursuant to truth in sentencing, and 3 years' MSR. Defendant acknowledged that he understood the new charge against him, including the minimum and maximum sentencing range.

¶ 13    The circuit court then cautioned defendant that he did not have to plead guilty. Defendant acknowledged that he understood. The court also informed defendant that he had "a constitutional right to a trial." Defendant acknowledged that he understood. The court proceeded to explain what would happen if defendant decided to plead not guilty and have a jury trial, which included jury selection, the State's presentation of evidence, and witness testimony. The court informed defendant that he would be present at trial and have the opportunity to cross-examine the witnesses against him. Defendant acknowledged that he understood. The court informed defendant that he would then have the right to call his own witnesses after the State finished calling its witnesses, although he did not have to, and that he could choose to testify at trial, although he was not required to do so. Defendant acknowledged that he understood. The court then admonished defendant that there would not be a trial if he pled guilty. Defendant, again, acknowledged that he understood.

¶ 14    Next, the circuit court asked defendant if he had been promised anything, other than the plea agreement, to plead guilty. Defendant responded no. The court then asked defendant if anyone had pressured or threatened him to plead guilty. The following colloquy took place:

"THE COURT: Do you feel like you're under any pressure to plead guilty?

THE DEFENDANT: Somewhat, but *** you know what I'm sayin'?

THE COURT: Okay. Where is that pressure coming from, if I might ask?

THE DEFENDANT: Like, you know what I'm sayin', like I don't want to, you know what I'm sayin', go to trial and lose my life for something that—

THE COURT: All right. So it's the pressure of facing *** the original charge with the firearm enhancement?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Is there any pressure coming from any person—

THE DEFENDANT: No, sir.

THE COURT: —to cause you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: All right. So there's no one out there—they're not threatening you or your family that you better do this or else? Nothing like that?

THE DEFENDANT: No, sir."

The State then provided a factual basis for the newly charged offense, to which Attorney Enyart affirmatively indicated that the State could prove beyond a reasonable doubt at trial.

¶ 15    The circuit court then asked defendant if he had "any comments about what [he] just heard from [the State]?" Defendant responded, "No." During a back-and-forth discussion between the court and defendant, defendant first admitted that he was at the house where he was arrested, but then denied being present when the shooting took place. Following a short discussion off the record between defendant and Attorney Enyart, defendant informed the court that he was high and intoxicated on the date of the incident

7

and did not remember being at the home where he was arrested. The following conversation took place between the court and defendant:

"THE COURT: So you've had plenty of opportunity to talk with Mr. Enyart about this?

THE DEFENDANT: Yes, sir.

THE COURT: And you think that even though there's some question in your mind because you were—you may have been under the influence—were you under the influence of weed and alcohol?

THE DEFENDANT: Yes, sir.

THE COURT: And you feel there may be some question in your mind as to exactly how it happened?

THE DEFENDANT: Yes, sir.

THE COURT: You still think it is in your best interest to plead guilty because of the nature of the plea negotiations?

THE DEFENDANT: Yes, sir.

THE COURT: And give up your right to defend yourself on *** this charge?

THE DEFENDANT: Yes, sir.

THE COURT: And give up your right to maybe even present a defense of intoxication, that you were under the influence, and that jury might say, well, he was so intoxicated that we're going to not hold him criminally responsible? You understand that you could do that—

THE DEFENDANT: Yes, sir.

THE COURT: —if you went to trial? You want to give all of that up?

THE DEFENDANT: Yes, sir.

THE COURT: You've had plenty of time to think about it?

THE DEFENDANT: Yes, sir."

8

Subsequently, defendant pled guilty to first degree murder, and the court accepted defendant's plea of guilty, finding that a sufficient factual basis for the plea existed.

¶ 16    After defendant waived his right to a presentence investigation, the circuit court imposed the agreed upon sentence of 26 years in IDOC and credited defendant for time served from December 1, 2014, to September 1, 2016. Following imposition of sentence, the court admonished defendant that he had 30 days to file a motion to withdraw his guilty plea. In that event, the court would hold a hearing. If defendant proved a substantial error had occurred, the court would start defendant's case over. The court then admonished defendant of his appeal rights.

¶ 17    On September 29, 2016, defendant, represented by Attorneys Flynn and Enyart, filed a motion to withdraw guilty plea and vacate sentence. Defendant claimed his plea was not knowing and voluntary because he did not understand (1) the potential sentence he faced, (2) the evidence that would be presented against him, and (3) the nature of the charges against him. In addition, defendant claimed that he had "a defense worthy of consideration."

¶ 18    On June 6, 2017, defendant filed a handwritten letter with the circuit court inquiring whether Attorney Enyart had filed the motion to withdraw his guilty plea and vacate, as they had discussed in the weeks after defendant's sentencing. Defendant's motion to withdraw guilty plea and vacate sentence was set for hearing on July 5, 2017.

¶ 19    On July 17, 2017, defendant, represented solely by Attorney Flynn, filed an amended motion to withdraw guilty plea and vacate judgment pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Defendant asserted the same claims raised

in his original motion to withdraw guilty plea and vacate sentence but added a new claim that his guilty plea was involuntary because he was using medication that affected his ability to understand the admonishments given at the guilty-plea hearing. Attorney Flynn filed a certificate of compliance with Rule 604(d) that same day.

¶ 20    On July 17, 2017, the circuit court held a hearing on defendant's amended motion to withdraw guilty plea and vacate judgment. At the hearing, Attorney Flynn represented defendant. On direct examination, the following discussion took place between Attorney Flynn and defendant:

> "MR. FLYNN [(PUBLIC DEFENDER)]: *** A couple things that we talked about are I think you weren't pleased with Mr. Enyart previously. He was one of your lawyers, right?
>
> THE DEFENDANT: Yes, sir.
>
> MR. FLYNN: And I was the other lawyer, is that right?
>
> THE DEFENDANT: Yes, sir.
>
> MR. FLYNN: Okay. And I just want to make sure on the record, are you okay proceeding in this with me as your attorney?
>
> THE DEFENDANT: Yes, sir."

Defendant then testified that he had been taking medications for depression and insomnia at the time of his plea. Because he would have been able to more clearly understand the guilty plea proceedings, defendant asserted that he would not have pled guilty if he were off medications. Defendant asserted that he did not understand "what the evidence was going to be." He claimed that he "kind of understood it, but at the same time [he] didn't." Attorney Flynn then asked defendant if his misunderstanding "all stems from the

10

medication you were taking," to which defendant responded, "Yes." After acknowledging that he understood the court could impose a longer prison sentence if his motion was granted, Attorney Flynn asked defendant if there was "anything else that you want to share with the Court?" Defendant responded:

> "I feel that like if Alex Enyart wouldn't have been like pressuring me into *** pleading guilty to 26 years, I would have went [*sic*] to trial. And if I would have felt like he was taking my case in his best interest, *** I would have went [*sic*] to trial with him. But I was scared that I was going to go to trial and he was going to sell me out and I was going to have to get *** a lot of time. So I really—my back was against the wall. I really had no other choice."

¶ 21 Following defendant's testimony, the following dialogue took place:

> "THE COURT: Here is my concern with us proceeding. It seems to me that you're a witness, Mr. Flynn.
>
> MR. FLYNN: Quite possibly.
>
> [ASSISTANT STATE'S ATTORNEY]: I would agree with the Court, Your Honor.
>
> THE COURT: Mr. Pitts, *** [i]n order for me to fairly consider your allegations that you're making, even though you're not saying anything negative about Mr. Flynn's performance, you're saying things about Mr. Enyart. And Mr. Flynn—well, [the State] may want to call Mr. Enyart and Mr. Flynn as witnesses to address some of the issues, which [it] would have the right to do, but not if Mr. Flynn is your lawyer."

In response, Attorney Flynn informed the court that he was not present in the courtroom on September 1, 2016, the day defendant entered his guilty plea. In addition, Attorney Flynn argued that he could continue to represent defendant because defendant was not alleging ineffective assistance of counsel against him. Assistant State's Attorney (ASA) Deborah Phillips indicated to the court that, presuming Attorneys Flynn and Enyart had

11

met with defendant together, she would need Attorney Flynn to testify as to whether he witnessed any alleged coercion or pressure by Attorney Enyart. At the request of the court, ASA Phillips proceeded to cross-examine defendant.

¶ 22     On cross-examination, defendant acknowledged he had informed the circuit court, prior to pleading guilty to first degree murder, that no one had pressured him, even though he now claimed Attorney Enyart had pressured him. In particular, defendant claimed that he thought the court was referencing pressure "outside of being with him and Alex Enyart." Moreover, defendant also acknowledged that he did not inform the court at the guilty plea negotiations that he was on medication, and he did not recall telling the court that he did not understand the proceedings. The following colloquy then took place:

> "ASA PHILLIPS: Did you ever tell Mr. Flynn that Mr. Enyart was pressuring you?
>
> THE DEFENDANT: I mean yes, yes, ma'am.
>
> ***
>
> THE COURT: Well, when did that happen?
>
> MR. FLYNN: That would have been my question. Thank you.
>
> THE DEFENDANT: When did I tell you? I think—I didn't—like when I had sit-downs with him, I think I would have told him like, man, I'm feeling pressured by the dude because he want [*sic*] me to cop out to something that I didn't do and I really want to go to trial.
>
> * * *
>
> THE COURT: Well, was it before— it was before you pled guilty, right?
>
> THE DEFENDANT: Yes. Yes, sir.

12

THE COURT: Did you tell Mr. Flynn the same thing, that you wanted to go to trial?

THE DEFENDANT: I done [*sic*] told him multiple times, him and Alex Enyart together, that I wanted to go to trial, but they were saying that it's to my best ability to cop out to 26 years.

THE COURT: They both told you that?

THE DEFENDANT: Yes, sir."

In closing arguments, Attorney Flynn did not address defendant's claim of ineffectiveness, but primarily focused on the defendant's use of medication on the day of the plea. Attorney Flynn asserted that defendant's plea of guilty was not knowing and voluntary because the medication had affected defendant's state of mind and his ability to understand the consequences of the plea.

¶ 23 Following closing arguments, the circuit court denied defendant's motion to withdraw guilty plea and vacate sentence. In denying the motion, the court stated that defendant did not appear impaired at the guilty-plea hearing, and there was no indication he was taking psychotropic medication, which could give rise to an issue as to voluntariness. In addition, the court indicated that it had "significant exchanges" with defendant regarding his understanding of the proceedings, the nature of the charges, and the possible sentencing ranges he faced if he either pled guilty or chose to plead not guilty and proceed with a jury trial. Moreover, the court, after a review of the transcript, stated that defendant told the court "clearly *** that he wasn't being pressured by anyone to plead guilty," and defendant never expressed at the hearing that either Attorneys Flynn or Enyart inappropriately pressured him to plead guilty. In fact, the court, after reviewing

13

the transcripts in depth, stated that it had "nothing objective to point to" with regard to defendant's claim that Attorney Enyart was ineffective in pressuring and coercing him to plead guilty. Defendant filed a timely notice of appeal.

¶ 24                                                II. Analysis

¶ 25    On appeal, defendant argues that the circuit court erred in denying his amended motion to withdraw guilty plea and vacate sentence where postplea counsel, Attorney Flynn, failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) by failing to include in the amended motion defendant's claim that plea counsel, Attorney Enyart, provided ineffective assistance of counsel. We review Attorney Flynn's compliance with Rule 604(d) *de novo. People v. Prather*, 379 Ill. App. 3d 763, 768 (2008).

¶ 26    Rule 604(d) "governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7. Pertinent to this appeal, the rule provides:

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

14

Because the filing of a Rule 604(d) certificate " 'enables the trial court to insure that counsel has reviewed the defendant's claim and considered all relevant bases for the motion to withdraw the guilty plea or to reconsider the sentence' " (*In re H.L.*, 2015 IL 118529, ¶ 10 (quoting *People v. Shirley*, 181 Ill. 2d 359, 361 (1998))), it is well established that strict compliance is required with the filing of a Rule 604(d) certificate (see *In re H.L.*, 2015 IL 118529, ¶ 8). If the certificate does not comply with Rule 604(d), the reviewing court must "remand to the circuit court for the filing of a new motion to withdraw guilty plea *** and a new hearing on the motion." *People v. Janes*, 158 Ill. 2d 27, 33 (1994). "[W]here compliance with the substantive requirements of Rule 604(d) is doubtful, so is the fairness of the proceedings." *People v. Love*, 385 Ill. App. 3d 736, 739 (2008).

¶ 27 Here, the parties agree that Attorney Flynn's Rule 604(d) certificate was facially valid. Despite this, defendant argues that "the record undermines the representations in the complete Rule 604(d) certificate filed by post-plea counsel." Specifically, defendant asserts that Attorney Flynn failed to comply with the requirements of Rule 604(d) when he filed the amended motion without including defendant's claim that Attorney Enyart provided ineffective assistance of counsel by pressuring defendant into accepting the plea agreement. Thus, we need only address whether Attorney Flynn satisfied the last substantive requirement of Rule 604(d), which required him to make amendments necessary for adequate presentation of defendant's claims.

¶ 28 After carefully reviewing the record, this court cannot say that Attorney Flynn failed to comply with Rule 604(d) by failing to include defendant's claim that Attorney

15

Enyart provided ineffective assistance of counsel. A review of the record indicates that the circuit court previously determined, during the July 7, 2016, hearing on defendant's motion for appointment of new counsel, that it had insufficient cause to conclude that Attorney Enyart was incompetent or had acted in a manner demonstrating that he would inadequately represent defendant at trial. Ultimately, the court admonished defendant that it "[had not] seen anything that is untoward or improper or reflects or suggests to me that [Attorney Enyart] is not representing you aggressively and competently in this *** case." Given the court's determination that there was no evidence to support defendant's unsubstantiated claims, the court expressed, contrary to defendant's allegations, confidence in Attorney Enyart's ability to appropriately and adequately assess and evaluate evidence in defendant's case.

¶ 29    The record also reveals that, on September 1, 2016, Attorney Enyart represented defendant at the guilty-plea hearing. Following the State's presentation of the plea agreement, the circuit court asked defendant if anyone had pressured or threatened him to plead guilty. In answering this question, the following discussion took place:

"THE COURT: Do you feel like you're under any pressure to plead guilty?

THE DEFENDANT: Somewhat, but *** you know what I'm sayin'?

THE COURT: Okay. Where is that pressure coming from, if I might ask?

THE DEFENDANT: Like, you know what I'm sayin', like I don't want to, you know what I'm sayin', go to trial and lose my life for something that—

THE COURT: All right. So it's the pressure of facing *** the original charge with the firearm enhancement?

THE DEFENDANT: Yes, sir.

16

THE COURT: Okay. Is there any pressure coming from any person—

THE DEFENDANT: No, sir.

THE COURT: —to cause you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: All right. So there's no one out there—they're not threatening you or your family that you better do this or else? Nothing like that?

THE DEFENDANT: No, sir."

During the discussion, as highlighted above, the court asked defendant three separate times whether he had been pressured or threatened by anyone to plead guilty. In his responses, defendant never mentioned Attorney Enyart, but merely stated "no, sir" each time, even though he had requested new counsel less than two months before the September 1, 2016, hearing. In addition, defendant acknowledged that the pressure he felt was due to the possible firearm sentencing enhancement on the original charge.

¶ 30    We also find it significant that following the back-and-forth discussion with the circuit court after the State's recitation of the factual basis during the plea hearing on September 1, 2016, defendant had an off-the-record discussion with Attorney Enyart. Defendant then clarified that he was intoxicated and did not remember being at the home where he was arrested. The court, after confirming that defendant had "plenty of opportunity" to consult with Attorney Enyart, asked defendant if he believed it was still in his best interest to plead guilty to the charge of first degree murder. Defendant stated, "Yes, sir." Again, defendant made no comments during this hearing that Attorney Enyart was pressuring or coercing him to plead guilty.

17

¶ 31 Lastly, the record reflects that the circuit court addressed defendant's ineffective assistance claim at the hearing on July 17, 2017, despite Attorney Flynn's failure to include the claim in the amended motion. It was only after Attorney Flynn, in concluding the direct examination, asked defendant whether he had anything else that he wanted to share with the circuit court that defendant reiterated his previous claim of Attorney Enyart pressuring him to accept the plea agreement. However, the court, again, noted that it had "nothing objective to point to" with regard to defendant's claim that Attorney Enyart was ineffective in pressuring and coercing him to plead guilty. Accordingly, the court twice considered, and rejected, defendant's claim of ineffective assistance on the part of Attorney Enyart.

¶ 32 In light of the foregoing, we conclude that the record fails to substantiate defendant's claim that his guilty plea was involuntary due to ineffective assistance on the part of Attorney Enyart. Accordingly, we conclude that Attorney Flynn was not required to include the claim to fulfill his obligation under Rule 604(d). Thus, we find no basis to vacate the judgment of the circuit court denying defendant's amended motion to withdraw guilty plea.

¶ 33                                     III. Conclusion

¶ 34 Based on the foregoing, the circuit court of St. Clair County's order denying defendant's amended motion to withdraw guilty plea and vacate sentence is hereby affirmed.


¶ 35 Affirmed.

18